## Chicago & Carterville Coal Company v. D. F. Hartwell, Administrator of the Estate of Elizabeth Haneline.

1. PEREMPTORY INSTRUCTION—*when should be given.* A peremptory instruction should be given where the declaration is wholly unsupported by any evidence tending to prove the *gravamen* of any charge upon which any count of the declaration is based.

Action on the case for death caused by alleged wrongful act. Appeal from the Circuit Court of Williamson County; the HON. WARREN W. DUNCAN, Judge, presiding. Heard in this court at the August term, 1904. Reversed. Opinion filed March 17, 1905. Rehearing denied August 24, 1905.

E. E. DENISON and W. H. WARDER, for appellant.

SPILLER & WHITE, for appellee.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was a suit in case, in the Circuit Court of Williamson County, by appellee against appellant, to recover damages occasioned to appellee as widow of William Haneline by the death of her husband as a result of an injury received while in the service of appellant, as a coal miner in one of its mines. Trial by jury. Verdict and judgment in favor of appellee for $3,000.

After the rendition of the judgment and the ordering of appeal, Elizabeth Haneline, the sole appellee, died. D. F. Hartwell was appointed administrator of her estate, and upon due suggestion of these facts was, as such administrator, substituted as appellee, in this case.

The declaration consists of two counts, denominated, the first count and the second count, and based respectively on sections 16 and 18, chapter 93, of the Revised Statutes (Mine and Miners Act). The first, is based upon the charge that appellant wilfully failed to furnish props. The second, is based upon the charge that appellant wilfully failed to have its mine examined by a mine examiner, and to have inscribed on the walls, the month and day of the visit of

such examiner, and to place a conspicuous mark at all dangerous places, and to keep a book for such examiner to make a daily record in, of the condition of the mine; and wilfully failed to make all dangerous conditions of its mine safe before permitting deceased to enter the mine and his room to work therein.

The provisions of the statute are:

"Sec. 16 * * * He (the mine manager) shall always provide a sufficient supply of props, caps and timber delivered on the miners' cars at the usual place when demanded, as nearly as possible, in suitable lengths and dimensions for the securing of the roof by the miner, and it shall be the duty of the miner to properly prop and secure his place with materials provided therefor."

"Sec. 18 (a) A mine examiner shall be required at all mines. His duties shall be to visit the mine before the men are permitted to enter it, and first, he shall see that the air-current is travelling in its proper course and in proper quantity. He shall then inspect all places where men are expected to pass or work, and observe whether there are any recent falls or obstructions in rooms or roadways or accumulation of gas or other unsafe conditions. He shall especially examine the edges and accessible parts of recent falls and old gobs and air-courses. As evidence of his examination of all working places, he shall inscribe on the walls of each, with chalk, the month and day of the month of his visit.

(b) When working places are discovered in which accumulations of gas or recent falls, or any dangerous conditions exist, he shall place a conspicuous mark thereat as notice to all men to keep out, and at once report his finding to the mine manager. No one shall be allowed to remain in any part of the mine through which gas is being carried into the ventilating current, nor to enter the mine to work therein, except under the direction of the mine manager, until all conditions shall have been made safe.

(c) The mine examiner shall make a daily record of the conditions of the mine, as he found it, in a book kept for that purpose, which shall be preserved in the office for the information of the company, the inspector and all other persons interested, and this record shall be made each morning before the miners are permitted to descend into the mine."

As to the first count the evidence tends to prove that during the ten days or two weeks preceding the death of deceased, he had on a number of occasions ordered props, and that there had been some delay in sending them, but it is conceded, that at least as early as Friday morning, before the following Monday when the injury causing the death occurred, there was an abundant supply of suitable props at the proper place. If these props were needed to make the roof safe, it was the duty of deceased and his "buddy," a fellow-servant, to set them. The statute says: "And it shall be the duty of the miner to properly prop and secure his place with material provided therefor." They did set two props Friday and three Saturday, and there were plenty more there ready to be set, if deceased and his buddy had deemed it necessary to set them.

There is no evidence tending to prove a wilful violation of section 19 of the statutes, upon which the second count of the declaration is based, in any respect charged.

The declaration is wholly unsupported by any evidence tending to prove the *gravamen* of any charge upon which either count is based. The trial court should have directed a verdict in favor of appellant.

The judgment of the Circuit Court is reversed, and we find as ultimate facts to be incorporated in the judgment, that appellant was not guilty of wilfully violating the statute in any respect charged in the declaration, and that deceased came to his death as a result of risks and dangers incident to the business in which he was at the time engaged, and which he voluntarily assumed.

*Reversed.*